**Alfred L. STONE, Plaintiff,**

v.

**UNITED STUDENT AID FUNDS, INC. and Diversified Collection Services, Inc., Defendants.**

**No. IP 92–955 C.**

United States District Court, S.D. Indiana, Indianapolis Division.

March 25, 1993.

Alfred L. Stone, pro se.

Charles T. Gleason and David Boodt, Corporate Counsel, United Student Aid Funds, Inc., Fishers, IN, for defendant.

## ENTRY AND ORDER

STECKLER, District Judge.

This matter is before the Court on the motion of defendant, United Student Aid Funds, Inc. ("USA Funds"), for summary judgment with respect to the claims asserted in the plaintiff's second amended complaint. Fed.R.Civ.P. 56(c). USA Funds also requests the Court enter summary judgment in its favor on its counterclaim. Having reviewed the motion, the memoranda of law, as well as the documents submitted in support of and in opposition to the motion, the Court concludes that said motion should be granted in both respects. The following discussion constitutes the Court's findings of fact and conclusions of law.

### Background

Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.*, established the Guaranteed Student Loan Program ("GSLP") to assist students in obtaining the funds to pay the tuition and expenses of post-secondary education. 34 C.F.R. § 682.-100(a)(1). Under the GSLP, private lenders make low-interest loans to students, subsidized by the federal government. The lenders are insured by various state guaranty agencies that 100% of the unpaid principal of qualifying loans will be paid in case of default. Each state wishing to enable students to participate in the program must either establish its own guaranty agency or designate a private, non-profit institution to serve as such. *See* 20 U.S.C. § 1085(j). This agency, in turn, must enter into written agreements with the Secretary by which it agrees to operate the program under GSLP guidelines. 34 C.F.R. § 682.401. The Secretary is also authorized to enter into reinsurance agreements with the guaranty agencies by which the Secretary promises to reimburse between 80%–100% (depending upon the agencies default rate) of the amounts expended by the guaranty agency in repaying the unpaid principal remaining on defaulted loans. 34 C.F.R. §§ 682.404 and 682.405.

While attending the University of the District of Columbia, the plaintiff, Alfred Stone ("Stone") applied for and received two guaranteed student loans. On October 1, 1985, Stone executed a promissory note in favor of First American Bank, promising to repay a guaranteed student loan in the amount of $2,500.00. Stone executed a second promissory note in the amount of $2,500.00 on August 5, 1986. USA Funds was the guaranty agency with respect to each of these loans. Thereafter, the Student Loan Marketing Association ("Sallie Mae") purchased the promissory notes from First American Bank, and the Loan Servicing Center/Florida ("LSC/F") serviced the loans on behalf of Sallie Mae.

Under the terms of both promissory notes, a student must begin repaying his loan when his "grace period" expires. The grace period begins when the student "stops carrying, at an eligible school approved by the Guarantor, at least one half the normal full-time academic work load required by the school." Stone maintained a full-time academic work load until December 31, 1989, at which time he reduced his work load to less than one

half the normal full-time academic workload required by the University. Thereafter, sometime in early 1990, Stone was informed by Sallie Mae that the first payment on his student loan was to commence in August of 1990. Stone obtained his undergraduate degree from the University in May of 1990. On two occasions in July of 1990, Stone contacted LSC/F by telephone to inform it of his change of address. However, each time, he was told that he would have to call back as his records had not yet been entered on the computer.

In August of 1990, Stone enrolled at the Thurgood Marshall School of Law at Texas Southern University. At the time he entered law school, however, Stone's loans were delinquent because he had not made the August 1990 payment. On September 28, 1990, the LSC/F received Stone's request for a deferment from repaying his undergraduate student loan while he was enrolled as a full-time student in law school. While Stone requested a deferment until May of 1991, the deferment was granted only for the period from August 13, 1990 to December 31, 1990, the period certified by the law school. Because the deferment only covered the first semester of law school, Stone's loans became eligible for repayment on January 2, 1991.

Anticipating that Stone would enter repayment status in January of 1991, the LSC/F initiated attempts to contact Stone in October of 1990. LSC/F's records reflect that it repeatedly attempted to contact Stone during the course of its collection activities by way of letter, telephone and skip tracing techniques. In this regard, LSC/F also contacted the references listed on Stone's original promissory notes, but said references did not know Stone's whereabouts. Although the deferment request form Stone completed maintained his law school address, the LSC/F was unable to locate Stone until June of 1991.

Meanwhile, USA Funds initiated its due diligence collection efforts on March 27, 1991.

On June 4, 1991, after he had completed his first year of law school, USA Funds finally made contact with Stone. At that time USA Funds advised Stone that his loans were about to go into default status and that he should contact Sallie Mae. On June 6, Stone contacted his lender, through its agent LSC/F, which in turn sent him a deferment form as requested on June 12. Although Stone advised a representative for the LSC/F that he would fax the completed deferment request directly to it, he forwarded the form to the law school. In July of 1991, having failed to receive a request for deferment from Stone, the LSC/F placed Stone's loans in default status because they had been delinquent for 180 days. On July 17, 1991, the LSC/F filed a claim with USA Funds on the defaulted loans. On December 27, 1991, USA Funds paid the claim in the amount of $5,461.93. USA Funds assigned Stone's account to Diversified Collection Services, Inc. for collection.

### Analysis

Stone filed this *pro se in forma pauperis* suit against USA Funds, *inter alia*, alleging the deprivation of his civil and constitutional rights. The Court denied Stone's request to proceed *in forma pauperis* as to any claim the complaint purported to assert under 42 U.S.C. §§ 1981 and 1985 "because the predicate elements necessary to support causes of actions under these statutes are entirely absent from the complaint...." September 9, 1992 Entry and Order Granting in Part and Denying in Part Request to Proceed *In Forma Pauperis*. However, the Court granted the plaintiff's request "as to any cause of action arising out of the current status of his student loan *only*." Stone was subsequently granted permission to file an amended complaint. In his Second Amended Complaint, Stone invokes the procedural due process component of the Fifth and Fourteenth Amendments.[1] Specifically, Stone contends that USA Funds failed to give him adequate notice of the status of his student loans prior

---

1. Stone's Second Amended Complaint also alleges that the defendant's conduct denied him the "right to contract". Presumably, this is a claim under 42 U.S.C. § 1981, which this Court has previously denied Stone permission to pursue

due to the pleading deficiency described above. The amended complaint suffers the same shortcomings. Accordingly, the Court will not address this claim further.

to the due date of his first payment on January 2, 1991, or prior to declaring said loans in default in July of 1991.

USA Funds advances two arguments in support of its motion for summary judgment. First, it argues that Stone received adequate notice that his loans were approaching default status when it contacted him in early June of 1991.[2] Stone contests this proposition by arguing that he never received proper notice or a request for a deferment form before December 31, 1990. This argument is unavailing for several reasons.

■ Regulations governing the administration of the GSLP make clear that the burden of seeking a deferment rests with the borrower. Specifically, 34 C.F.R. § 682.-210(a)(4) provides:

> In order to receive a deferment, *the borrower must request the deferment* and provide the lender with all documentation required to establish eligibility for a specific type of deferment.

*See also* 20 U.S.C. § 1085(*l*). More importantly, Stone received notice of the impending default status of his loans approximately 30 days prior thereto. Stone does not dispute that USA Funds contacted him on June 4, 1991, and informed him that his student loans were about to go into default in July. Nor does Stone dispute that he spoke with the LSC/F on June 6 about the impending default, and requested a deferment form. Stone was sent a deferment form on June 12, in plenty of time to complete and return it before his loans went into default. On June 18, he advised the LSC/F that he would fax a copy of the form to it. In short, by his own account, Stone was made aware that (1) he was considered delinquent in the repayment of his loan, (2) he was about to go into default if payment was not made, and (3) he could submit a request for a deferment. Stone admits that he learned this information at least 30 days before Sallie Mae actually placed his loans in default. This was adequate notice of his impending default.

■ Furthermore, USA Funds was not responsible for placing Stone's loans in default status. Under the regulations governing the administration of the GSLP, lenders are responsible for servicing and collecting guaranteed student loans. *See* 34 C.F.R. §§ 682.406(a)(1) and (3); 34 C.F.R. § 682.-208; 34 C.F.R. § 682.411. In fact, a loan must be in default before a guaranty agency may pay a default claim. *See* 34 C.F.R. § 682.406(a). In the present case, Sallie Mae determined that Stone had defaulted on his student loans and filed a default claim with USA Funds on July 17, 1991. Moreover, the LSC/F correctly determined that Stone had defaulted on his loans.

Under the federal regulations default is defined as:

> The failure of a borrower to make an installment payment when due, or to meet other terms of the promissory note under circumstances where the Secretary or guarantee agency finds it reasonable to conclude the borrower no longer intends to honor the obligation to repay, providing that this failure persists for—
>
> · (1) 180 days for a loan repayable in monthly installments[.]

34 C.F.R. § 682.200(b). Thus, a loan is in default if it is delinquent for over 180 days. Stone was granted a deferment through December 31, 1990. Once a deferment period expires the borrower resumes any delinquent status that existed prior to the deferment period. 34 C.F.R. § 682.210(a)(7). Because Stone's loans were delinquent at the time he

**2.** USA Funds does not expressly address the issue whether the due process clause even applies in this case. The determination of whether the plaintiff is entitled to procedural due process typically involves an analysis of the following issues: (1) whether there has been sufficient governmental action (either state of federal) sufficient to invoke the guarantees of the amendment; and (2) whether plaintiff has a claim of entitlement under the due process clause for the right being asserted. *See Holbrook v. Pitt,* 643 F.2d 1261, 1276–77 (7th Cir.1981). Apparently USA Funds presumes an affirmative answer to these questions, at least for the purposes of its motion for summary judgment. Having determined that the due process clause applies, the Court must next determine the process to which the plaintiff is entitled. *Holbrook,* 643 F.2d at 1277. Of course, the essential elements of due process are notice and an opportunity to respond. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In its motion for summary judgment, USA Funds focuses upon the element of notice.

applied for deferment, his loans immediately entered repayment status on January 2, 1991. Thereafter, Stone neither submitted an additional request for a deferment nor commenced making payments on the loans. The 180 day period expired sometime in early July 1991, and the LSC/F properly placed Stone's loans in default at that time. .

After he defaulted on his loans, USA Funds was required to report information concerning the default to national credit bureaus. *See* 34 C.F.R. § 610.410(b)(3). Finally, because Stone defaulted on his loan, USA Funds could not grant him a further deferment on that loan. Once a loan is in default status, the borrower is not eligible for a deferment as to that loan, or to receive further loans, unless he makes satisfactory arrangement to repay the loan. 34 C.F.R. § 682.201(e)(1) and (2); 34 C.F.R. § 682.-210(a)(8). USA Funds followed the procedures mandated by the Department of Education in administering Stone's guaranteed student loan and did not violate the United States Constitution in this regard.[3] It is therefore entitled to summary judgment as a matter of law with respect to Stone's complaint.

### Counterclaim

■ On November 6, 1992, USA Funds filed a counterclaim against Stone seeking to collect the outstanding amount of his guaranteed student loans. The Court has jurisdiction over this claim under 28 U.S.C. § 1367(a). Although Stone has filed a brief in opposition to USA Funds's motion for summary judgment on its counterclaim, said brief does not offer any substantive reasons why judgment should not be entered in favor of USA Funds. Specifically, Stone merely sets forth the following points:

1. USA Funds did not comply with 34 C.F.R. § 682.406(9) and therefore is not entitled to reinsurance from the Department of Education.

2. The guaranty agreement between USA Funds and Sallie Mae provides that the lender will indemnify USA Funds with respect to any violations of the federal regulations governing the guaranteed student loan program.

3. USA Funds failed to send a letter of verification to the Thurgood Marshall School of Law prior to declaring his student loans in default.

The first two points have nothing to do with whether USA Funds is entitled to collect on the outstanding amount of Stone's student loans. The third point raises the issue of whether Stone's student loan was properly placed in default. As examined above, Sallie Mae correctly determined Stone's loans to be in default. The fact that USA Funds may or may not have sent a letter of verification to the law school does not affect this determination. In fact, the regulation relied upon by Stone places the responsibility of verifying enrollment upon the lender. *See* 34 C.F.R. § 682.411(g).

The uncontested facts reveal that Stone executed two promissory notes for guaranteed student loans on October 1, 1985 and August 5, 1986. Stone does not dispute that the signatures appearing on both promissory notes are his. Further, Stone does not contest that he never made a single payment on either of the loans. Finally, Stone does not challenge that as of September 30, 1992, he owed USA Funds the sum of $5,446.41 in principal, with interest of $331.95, for a total of $5,778.26.

### Conclusion

Accordingly, by reason of the foregoing, the Court hereby GRANTS the defendant's motion for summary judgment in all respects. The plaintiff's complaint against USA Funds is dismissed. USA Funds is entitled to judgment on its counterclaim as a matter of law in the amount of $5,778.26 as of September 30, 1992, with interest accruing at 8% per annum until judgment, post-judgment

---

3. Stone also complains that USA Funds violated collection practices by sending a letter of verification to Howard Payne University, a school which the plaintiff had never attended. However, USA Funds did not intentionally send the verification letter to the wrong school. Rather, the undisputed facts reveal that USA Funds received this information from Stone's mother while pursuing its efforts to locate him.

interest at the statutory rate, costs, and attorney fees.

IT IS SO ORDERED.